Price, J.
At the expense of much space, we have-presented in our statement of this case, the ground *240 work of the dispute between the parties, — not a dispute about the facts, but concerning the law of the ■case. Counsel for the parties are as one upon the facts as we have stated them, and when they are examined it is not difficult to determine the legal conclusion to which they inevitably lead.
Two or three questions arise in the record and they have received the attention of counsel and have been discussed in their briefs.
One is the extent of the agency of E. A. Smith, the purchaser of the chattels from C. F. Hurr. It is conceded that the scope and terms of this agency depend entirely upon the language of the chattel mortgage executed by Smith to Hurr when the purchase was made. It is not claimed that either by parol, or any other instrument of writing, the scope of his authority was extended or modified. At the time of the purchase of the stock of groceries, and the fixtures, Smith paid Hurr in cash $405.00, and ■executed and delivered to Hurr, the vendor, four promissory notes, and secured their payment by a chattel mortgage on the property purchased, and provided in the instrument, that the lien created thereby, should extend to any goods which might be subsequently acquired and placed in the stock. As the very important part of the mortgage, it was agreed therein, “that the above described property is now by these presents delivered by said grantor (Smith, the mortgagor) to the said grantee (Hurr, the mortgagee), the same to remain in the possession and under the control of said.grantee, as hereinafter provided.”
It is next agreed that Smith, the purchaser and mortgagor, was placed in the possession of the goods and chattels, as the agent of Hurr, the vendor and *241 mortgagee, but providing that “such possession to be the possession of said grantee,” Hurr. The powers and authority of this agent are clearly defined and limited as follows: “to sell and dispose of said property, and to account and turn over to said grantee (Hurr) the proceeds of all such sales, at the maturity of said promissory notes from the date hereof. ’ ’
It is then provided that, for acting as agent in that behalf, he should have a weekly compensation to be paid out of the proceeds of the sales, the balance to be applied on the mortgage indebtedness. Sales were to be for cash only, and careful account thereof to be kept by Smith. If this agent should waste the property, or if he should fail to honestly account for proceeds of sales, his agency should cease, and Hurr could put another in his place as such agent. By another clause, Hurr, the mortgagee, is empowered, in case the notes were not paid at maturity from proceeds of sales by Smith, to sell and dispose of a sufficient amount of goods to satisfy the unpaid balance, but such sale should be public, after notice by three weeks ’ publication in a newspaper of general circulation in that county.
Keeping in mind that the goods and chattels so purchased and mortgaged by Smith constituted a retail grocery, the reason is apparent for delivering to the mortgagee the possession of the property under the mortgage. A chattel mortgage on a stock of goods being sold at retail, with the mortgagor in' possession retaining the power to sell, is always a precarious lien, and it may fail as against other creditors and bona fide subsequent purchasers. Freeman v. Rawson, 5 Ohio St., 1; Harman v. Abbey, 7 Ohio St., 218.
*242 To guard against danger, no doubt, the mortgage before us, was framed as it is, and it was competent for the parties to so provide.
In Kleme, Hegger & Co. v. Katzenberger & Co., 20 Ohio St., 110, this court held: “A stipulation in a mortgage of goods, that the mortgagor shall retain possession and sell the goods in the usual retail way, paying over the money received therefor to the mortgagee, as the goods are sold, does not render the mortgage, per se, fraudulent and void as against other creditors of the mortgagor. The question of good faith arising upon such stipulation ■ is one of fact for the determination of the jury.”
At the close of the opinion in that case, Scott, J., says: “That the mortgagor should thus act as agent of the mortgagees in selling the goods for their benefit, is not necessarily in fraud of the rights of other creditors, and if the transaction is bona fide it is difficult to see why it should not be upheld. Such an arrangement raises only a question of good faith, to be determined by the jury in the light of all the evidence, and is not per se fraudulent.”
In the case at bar, the powers and authority of the’ mortgagor were more carefully hedged about, because, while he was constituted the agent of the mortgagee to make sales, it was after a stipulation transferring possession to him, and that the possession for the purposes of the agency, in Smith to sell, should be the possession of the mortgagee.
It is clear therefore that .the instrument under consideration is one that . Smith had a right to execute and Hurr a right to receive.
Where, then, is found the authority for Smith, or Fisher for him, to bind Hurr or the plaintiff in error, Kelly, for the purchase of goods made of defendant *243 in error? In March, 1900, — over a year after the execution and delivery of the chattel mortgage by Smith to Hurr, the latter sold and transferred the last two notes secured by the mortgage to Kelly. This mortgage was on file in the proper office and was refiled within the proper time. It seems undisputed that Kelly never had possession of the mortgage, for it remained on file. Furthermore, the only authority vested in Smith to act as the agent of Hurr, must he found in the chattel mortgage. The trial court correctly told the jury in the charge, that “the evidence relating to the agency of E. A. Smith and his power as such is contained in a chattel mortgage offered in evidence in this cause.” It is not claimed now, that his agency and its scope are derived from any other source, and we look in vain for any sentence or word in the whole instrument, that authorized Smith or any one for him to purchase goods on the credit of the mortgagee. His power and duty was to sell goods, and have enough of the proceeds on hand at the maturity of the notes, to satisfy them. The agency of Smith was not general hut special, and limited to a particular purpose clearly defined.
But it is urged in argument, that the power to purchase goods for the store on the credit of Hurr, mortgagee, may be implied from Smith’s authority to sell the goods at retail, and the charge of the trial court is tainted with this error. The intention of the parties to the mortgage is very plain and nothing is left to inference or implication. They put their whole contract in writing, and the creation of the agency in Smith to sell at retail to pay off the mortgage debt, was for that purpose only.
The authority to purchase on the credit of the mortgagee, was never asserted or exercised by Smith. He *244 did not represent to plaintiff below that he was so authorized. In fact he purchased the goods in question in his own name as the owner of the store, and they were charged to him as such, and plaintiff below never had an account for them with Hurr or plaintiff in error, and knew nothing of Kelly’s relation to the stock or chattel mortgage, until he filed and proved his claim before the referee in bankruptcy, sometime after the last bill had been sold and delivered to Smith. Then assuming to experience some revelation, the defendant in error withdrew from the referee its claim against Smith for the goods furnished him, and brought the suit in the court below, which is now under review.
Another view urged for defendant in error is, that inasmuch as one of the stipulations of the mortgage extends its lien to goods subsequently acquired by Smith, such lienholder should be answerable for the new goods so supplied.
This view was in the mind of the trial court, and it pronounced condemnation upon an opposite opinion, and said, “The law will not permit any such transaction. If he had authority enough by his (Smith’s) purchase of these goods, to transfer the ownership of these goods from the seller of the goods to Mr. Hurr, he had authority enough as agent to bind Mr. Hurr in the purchase of these goods and for all purposes he would be the agent of Mr. Hurr in the purchase of the goods as well as in the sale of the goods. ’ ’
As there was no doubt about the condition of the mortgage as to the subsequently acquired goods, and that they went into the store with the other stock, the court practically decided the case in the face of the jury. This is true also of the special instruction *245 given, which appears in the statement of the case, for there the jury was told in substance that because Kelly became the owner of the last two notes given by Smith to Hurr and secured by the chattel mortgage, he “established such relations between himself and Smith as theretofore existed between said C. F. Hurr and E. A. Smith, and that said Smith in the future conduct of the grocery business and in making the subsequent purchases of goods from plaintiff, for which suit is brought, acted as agent for said Kelly and said Kelly under such state of facts is liable to pay for said goods.”
What was left for the jury? Nothing. The two instructions surrounded Kelly, and he had no escape. The court committed error there, and continued the error into the balance of the charge. The clause providing for a lien on subsequently acquired goods, seqms to have been the stumbling block for the court, as if it were a new development in the execution of chattel mortgages. There is nothing new or fraudulent in such provision. It was held long ago in Chapman v. Weimer et al., 4 Ohio St., 481, that, “when such mortgage authorizes the mortgagee to take possession of the property secured and attempted to be secured, it is a continuing executory contract; and when the mortgagor acquires such property after the execution of the mortgage and actually delivers the same to the mortgagee, the latter thereby acquires a valid lien on such subsequently acquired property.”
In this case, as we have seen, possession of the store was delivered to the mortgagee at the date of and by express terms of the mortgage, and so continued until Smith assigned.. The goods subsequently purchased by him passed to the mortgagee *246 and he had title to them. There was nothing in this clause of the mortgage to establish the relation of principal and agent between Hurr and Smith in the purchase of new goods, and certainly such relation did not pass to Kelly simply because he purchased two notes secured by the mortgage.
It is utterly incomprehensible to us, that the trial court should deduce such relation as a matter of law when there is not a single fact to justify it.
Another observation made in argument is, that authority to purchase goods on the credit of the mortgagee should be implied, because out of the proceeds of sales of goods, including subsequent purchases, the notes were to be paid. Beyond doubt, when Smith purchased the stock from Hurr and gave the mortgage in question, it was contemplated by the parties, that the profits of the business would enable Smith to meet the deferred payments, and also pay the bills for new goods. He assumed and perhaps tried to do both, but it appears he was a painter, rather than a merchant, and procured another to run the store, and eventually failed. The ■effects of his miscalculation or misfortune should not be visited upon one wholly innocent of their cause.
There is still one more argument urged, and it had ample recognition by the trial court. After Smith, mortgagor, assigned in bankruptcy, Kelly appeared with other creditors before the referee, and he presented his claim under , the mortgage. This was done on the nineteenth' day of September, 1900, more than a month after the last shipment made by defendant in error. In his affidavit proving his claim, Kelly says among other things: “And the said Jamison G-. Kelly is now the bona fide owner *247 and holder of the said promissory notes * * * and of the said chattel mortgage. And by virtue of the premises this deponent alleges that he is the owner of the said property mentioned in the said chattel mortgage, and being in the said store building mentioned in said chattel mortgage at the time the said Elliot A. Smith caused his petition in bankruptcy to be filed in the said district court, as security for the payment of said notes to him belonging. ’ ’ On the trial of this case in the common pleas, the defendant in error introduced this affidavit against the plaintiff in error, and counsel claim for it that it works an estoppel against Kelly, affiant, making any defense against the demand of defendant in error.
The trial court charged the jury upon this subject also, and said * * * “when the hearing was then had before the referee in bankruptcy, Mr. Kelly then came in and declared that he as the owner of these notes and chattel mortgage was the owner in possession of these goods described in the chattel mortgage which secured payment of these notes. He naturally claimed that he was in possession of these goods, but by his claim he secured the proceeds of the sale of the goods, and having claimed at that time he was the owner, and having claimed at that time he was in possession by reason of the position of this man Smith as agent, he is now estopped to deny that he was the owner. He is estopped to deny that he was in possession of these goods.”
Is this statement the law? Let us see. ‘ Wé have already found that while Smith was the agent of Hurr to sell goods enough to pay off the notes, he was not the agent of Hurr to purchase stock, on his credit. That'being so, if Smith still continued to be agent for *248 Hurr until lie parted with the notes to Kelly, and the-latter permitted Smith to remain as agent to sell to-pay off his notes, there was no new authority given Smith by Kelly, whereby-he could be held for purchases made by Smith. Kelly stood in Hurr’s shoes, is the very most that could be claimed. Hence, in the affidavit of Kelly before the referee, after reciting-the history of his notes and character of the mortgage, he ventures his opinion that “by virtue of the-premises, this deponent alleges that he is the owner of the said property mentioned in said chattel mortgage * * If Kelly took the place of Hurr in the chattel mortgage, and we should concede that Hurr’s possession of the stock passed to Kelly by reason of his purchase of the notes, then there was. no falsehood told by Kelly in his affidavit, although it be simply his opinion based on his rights under the mortgage. If his affidavit was not true in this, respect, — if his opinion was not sound, before the-referee was a suitable place for defendant in error to make a contest. It did not do so. There could not have been much surprise at the claim of Kelly, for-the chattel mortgage had been on file from January 11, 1899, up to the appearance before the referee,, and which was constructive notice to defendant in error of all its contents. In the meantime it sold and delivered goods to Smith and charged them to his. account. How then could the doctrine of estoppel apply? Did the affidavit of Kelly lead the plaintiff below to change its position to its injury? The goods, had already been furnished to Smith and on his credit. The only change of position which can be-attributed to the affidavit, is that defendant in error withdrew its claim for the goods from the referee- and decided to sue Kelly, and in place of receiving a. *249 dividend from the assets of Smith as at first intended, it would risk an action against Kelly to recover the full price of the goods sold to Smith. This, would he a new field for the operation of estoppels, —an act of Kelly long after the sales, to control or influence the conduct of defendant in error several months before. It would he an estoppel with retroactive operation. At all events being estopped to' deny that he was the owner and in possession of the-goods would not tend to make him liable for their purchase. The claim of estoppel has not the slightest foundation, and the court grossly erred in the charge upon the subject.
On the whole case it seems that the trial court: started into the trial with a marked misconception of the meaning of the chattel mortgage and the-rights of parties under it, and so starting, we find, error pervading the entire charge, except in the recitals of the terms of the mortgage and the locating-of the burden of proof. The tide had set in against. Kelly and it had no ebb thereafter, and when the court submitted to the jury the interrogatories requested by Kelly, it was told that, “if the plaintiff’ shipped to the agent of Jamison G-. Kelly these goods, then in law he.shipped the goods to Jamison Gr. Kelly, * * * f0r in law what a man does by the agent he does by himself.”
Having in the charge practically decided that Smith was the agent of Kelly, the court here dictated what answers should he made to the interrogatories,, and Kelly had no chance for escape.
The trial court erred in all the particulars referred to and its judgment is erroneous. It follows that the circuit court erred in affirming that judgment.
*250 Both judgments are reversed, and we think á retrial of the case would he useless, and conclude to render judgment for plaintiff in error on the undisputed material facts.

Judgments reversed.

Spear, O. J., Davis, Shauck, Crew and Summers, JJ., concur.